**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0921-15T4

ZAKIR HOSSAIN,

    Petitioner-Appellant,

v.

DEPARTMENT OF COMMUNITY
AFFAIRS HURRICANE
SANDY DIVISION,

    Respondent-Respondent.

_____

        Submitted May 4, 2017 — Decided August 9, 2017

        Before Judges O'Connor and Whipple.

        On appeal from the New Jersey Department of
        Community Affairs, Docket No. 0009245.

        Keith T. Smith, attorney for appellant.

        Christopher S. Porrino, Attorney General,
        attorney for respondent (Melissa H. Raksa,
        Assistant Attorney General, of counsel;
        Valentina M. DiPippo, Deputy Attorney
        General, on the brief).

PER CURIAM

    Petitioner Zakir Hossain appeals from the final agency

decision of respondent Department of Community Affairs (DCA),

which adopted the initial decision of an Administrative Law Judge (ALJ) pursuant to N.J.S.A. 52:14B-10(c). The ALJ determined petitioner was ineligible to receive grant money from the DCA for damage caused by Superstorm Sandy to a residence petitioner owned, because the residence was not his primary one. We remand for further proceedings.

I

Following Superstorm Sandy, petitioner applied for and received a $10,000 grant from the DCA for one of the two residences he owned. At the time, the DCA assumed the damaged residence was petitioner's primary one. Thereafter, the DCA checked the information petitioner provided when he applied for the grant. The DCA determined the residence was not petitioner's primary one and deemed him ineligible for the grant. The DCA demanded petitioner return the grant money. Petitioner appealed that determination and the matter was transferred to the Office of Administrative Law as a contested matter.

The salient evidence adduced at the hearing held before the ALJ was as follows. Petitioner testified he purchased a residence on Pacific Avenue in Atlantic City (Pacific residence) in 2001, and purchased a second residence on Fairmount Avenue (Fairmount residence), also in Atlantic City, in 2005.

A-0921-15T4

Petitioner lived in the Pacific residence with his wife and children until 2012; meanwhile, he rented out the Fairmount residence after acquiring it in 2005.

In June 2012, petitioner and his wife separated, and he moved into the Fairmount residence with his tenant. Petitioner reduced the rent the tenant was required to pay because he was sharing the premises with petitioner. When he moved out of the marital home, petitioner did not remove all of his belongings, and did not change his mailing address or update his driver's license to show he was residing at the Fairmount residence. The day Superstorm Sandy struck on October 29, 2012, petitioner, his wife, and children evacuated Atlantic City together. Thereafter, petitioner resumed living with his wife and children in the Pacific residence.

Petitioner testified he applied for and received the subject grant from the DCA because of damage to the Fairmount residence; he did not seek assistance on the ground the Pacific residence sustained damage. The DCA then advised it had determined the Fairmount property was not his primary residence and demanded the return of the grant money.

The record reveals the DCA's reasons for concluding the Fairmount residence was not petitioner's primary one were that, while living at such residence, petitioner's driver's license

3

and voter registration records reflected he was living at the Pacific residence, and the property tax bills for the Fairmount residence were being sent to the Pacific residence.

Following the hearing, the ALJ noted the eligibility criteria for the subject grant are found in the Policy and Procedure manuals for the Resettlement Program (RSP) and the Renovation, Reconstruction, Elevation and Mitigation Program (RREM), the relief programs that administer the award of grant money for victims of Superstorm Sandy. The ALJ cited language from the manuals stating eligibility for a grant requires an applicant to have owned and occupied the property that is the subject of the application as his or her primary residence on the date of the storm, and that second homes, vacation homes, and rental properties did not qualify. See RSP Policies & Procedures, Sections 2.1 and 4.1, http://www.renewjerseystronger .org/wp-content/uploads/2014/09/Resettlement_Program_Principal_P olicies_and-Procedures-0214.pdf (last modified July 29, 2013); RREM Policies & Procedures, Section 1.3, http://www.renewjerseys tronger.org/wp-content/upds/upds/2017/014/Reconstruction-Rehabilitation-Elevation-and-Mitigation-RREM-Program-Policies-Procdures.pdf (last modified April 1, 2017).

The ALJ then determined there was no evidence the Fairmount residence was petitioner's primary one because, when he resided

4

at such residence, petitioner failed to change his driver's license and mailing address to reflect his change in residence. Without citing any legal authority, the ALJ concluded these omissions revealed petitioner's belief the marital separation was not permanent and, thus, established the Fairmount residence was not his primary one. The ALJ stated:

> He was engaged in a marital dispute with his wife and temporarily moved from the martial home. Nothing in his conduct indicated intent to render the separation permanent, and indeed, the separation lasted only until immediately after Superstorm Sandy, at which time petitioner returned to his family at [the Pacific residence].

> Petitioner's situation at the time of Superstorm Sandy was no different from a man who leaves his wife and move[s] into a motel. The mere act of renting a motel room would not by itself establish residence in the motel. Petitioner's situation is identical. Instead of moving into a motel, he took a room with his tenant at [the Fairmount residence]. That action by itself did not establish permanent residence.

II

On appeal, petitioner argues: (1) the Fairmount residence was his primary one at the time of the storm; (2) as a domiciliary of Atlantic City at the time of the storm, he should be afforded benefits; and (3) he should be permitted to amend his application at this time to state the Pacific residence was his primary one at the time of the storm.

5

The second and third arguments were not raised before the agency, not to mention decided, and thus we decline to address them. "Generally, an appellate court will not consider issues, even constitutional ones, which were not raised below." State v. Galicia, 210 N.J. 364, 383 (2012). Even if this issue had been raised, the ALJ did not address this question in his opinion and, thus, we decline to do so in the first instance. Duddy v. Gov't Emps. Ins. Co., 421 N.J. Super. 214, 221 (App. Div. 2011).

An appellate court defers to an administrative agency's findings of fact if supported by substantial credible evidence in the record. See In re Herrmann, 192 N.J. 19, 27-28 (2007). However, we are not bound by an agency's determination of a strictly legal issue. Norfolk S. Ry. Co. v. Intermodal Props., LLC, 215 N.J. 142, 165 (2013). Thus, to the extent an agency's determination constitutes a legal conclusion, we review it de novo.

The ALJ accurately summarized the provisions in the RSP and RREM programs addressing residency. See RSP Policies & Procedures, supra, Sections 2.1 and 4.1; RREM Policies & Procedures, supra, Section 1.3. These provisions do state that, to be eligible for a grant, applicants must have owned and occupied the subject property as their primary residence on the

6

date of the storm, and that second homes, vacation homes, and rental properties did not qualify as a primary residence.  Ibid.

We note the RSP manual also addresses verification of residency.  Sections 4.2 and 4.3 of the RSP manual provide:

> 4.2. Verification of Primary Residence is determined through evaluation of multiple data sources and documents.
>
> The preferred verification requires all three of the following:
>
> > [1] Ownership of the property must be verified as described in Section 3.4.
> >
> > [2] FEMA records must show that the applicant reported to FEMA that the property was the applicant's primary residence at the time of the storm.
> >
> > [3] The applicant must present a New Jersey driver's license or New Jersey non-driver identification card that shows the damaged residence as the address.
>
> 4.3. Alternative documentation will be considered if primary residence cannot be confirmed as described in [Section] 4.2.
>
> Proof of ownership is required. If an applicant is unable to provide a New Jersey driver's license or non-driver identification card or FEMA records do not confirm primary residence, the applicant must present two of the following documents[:]

7

[1] Government issued document sent
to the damaged residence[.]

[2] Voter Registration Card[.]

[3] Insurance documentation
indicating that the damaged address
is the applicant's primary residence.

[RSP Policies and Procedures, supra,
Sections 4.2 and 4.3.]

Here, although there is no question defendant owned the Fairmount residence, there was no evidence (1) he reported to FEMA the Fairmount property was his primary residence at the time of the storm, and (2) his driver's license reflected the address of the Fairmount residence. However, as stated in Section 4.2, the production of this evidence is merely the "preferred" method of establishing a residence is primary; therefore, the production of this evidence is not the only method. Moreover, the manual does not state the failure to establish these three criteria is proof an applicant's residence is not primary. In fact, this section states verification of a primary residence is determined through the evaluation of "multiple data sources and documents." RSP Policies and Procedures, supra, Section 4.2.

Section 4.3 provides alternative documentation will be "considered" if the applicant's primary residence cannot be confirmed through the documents referenced in Section 4.2. Id.

8

at Section 4.3.  Petitioner failed to provide these documents as well, specifically, a copy of a document issued by the government that was sent to the Fairmount residence, a voter registration card reflecting his address to be the Fairmount one, and an insurance document indicating the Fairmount property was his primary residence.  However, the failure to produce any of these documents also is not fatal to establishing the Fairmount residence was his primary one.  The documentation referenced in Section 4.2 and 4.3 may well be probative of whether a residence is an applicant's primary one, but the failure to produce these documents does not conclusively establish an applicant's particular residence is not primary.

In our view, the ALJ was required to make findings on whether the Fairmount residence constituted petitioner's primary residence, and that required, at the outset, a determination of what constitutes a "primary residence."  Here, the ALJ determined the Fairmount residence was not primary because some of the documents listed in Sections 4.2 and 4.3 were not produced.  But, as we have observed, that omission on petitioner's part does not necessarily establish the Fairmount residence was not his primary one.

The ALJ also determined petitioner's move from the marital home was temporary because the petitioner did not exhibit any

9

conduct indicating he believed the separation was permanent; therefore, the ALJ concluded, the Fairmount residence was not a primary one. However, the ALJ did not cite any authority for the premise a person's subjective belief a move to a particular residence is temporary establishes a person's residence is not primary. Accordingly, we are constrained to remand for further findings on what constitutes a "primary residence."

Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0921-15T4